## In re MILLER.

2005-Ohio-7132.]

Court of Claims of Ohio,
Victims of Crime Division.

No. V2005–80177.

Decided Dec. 16, 2005.

ORDER OF THREE-COMMISSIONER PANEL

{¶ 1} Thomas Miller, the applicant, filed a supplemental compensation application seeking reimbursement of expenses incurred with respect to a July 30, 2004 assault, during which he was stabbed in the neck by Matt Castille. On December 21, 2004, the Attorney General denied the applicant's claim pursuant to R.C. 2743.52(A), contending that the applicant had failed to qualify as a victim of criminally injurious conduct. The Attorney General also denied the claim pursuant to R.C. 2743.60(F), contending that the applicant had engaged in substantial contributory misconduct. The Attorney General also denied the claim pursuant to R.C. 2743.60(C), contending that the applicant had failed to fully cooperate with law enforcement officials during its investigation of the matter. On January 14, 2005, the applicant filed a request for reconsideration. On March 11, 2005, the Attorney General determined that no modification of the previous decision was warranted. On March 24, 2005, the applicant filed a notice of appeal to the Attorney General's March 11, 2005 final decision. Hence, this matter was heard by this panel of three commissioners.

{¶ 2} The applicant, applicant's counsel, and an assistant attorney general attended the hearing and presented testimony and oral argument for the panel's consideration. Miller (now age 23) testified that the stabbing took place at his friend's, Mike Sefcik's, home. Miller stated that Sefcik had given him the authority and privilege to protect his teenage daughters (Linda and Melanie) when he was not at home. The applicant explained that the Sefcik home was known as a party house. The applicant stated that he had known Mike Sefcik for approximately four years and had spent ample time at Sefcik's home. Miller explained that on the night in question, he had been out driving with Linda Sefcik and had returned to the Sefcik home to find Castille there with Melanie Sefcik. The applicant stated that Castille was an acquaintance with whom he had had a past dispute approximately one year prior to the criminally injurious conduct. The applicant indicated that Castille mentioned the prior dispute and stated that he wanted to fight. However, the applicant told Castille that he did not wish to fight, and walked away. Shortly thereafter, the applicant testified that Linda Sefcik told him that she wanted Castille to leave and that Melanie Sefcik had already asked Castille to leave the premises. The applicant noted that Jim Thompson, a friend who was also at the Sefcik home, had informed him that

Castille was under the influence of cocaine. Miller stated that, using expletives, he asked Castille to leave the property. However, Castille laughed and quickly approached him with a knife. Miller explained that he swung and struck Castille in an attempt to escape being injured, but he nevertheless sustained injury to his neck. The applicant indicated that he had simply acted in self-defense when he initiated physical contact with Castille.

{¶ 3} Counsel stated that Miller's claim should be allowed, since the applicant acted under the authority and privilege of the homeowner, Sefcik, when he asked Castille to leave the premises. Counsel stated that the Attorney General had failed to prove that the applicant had engaged in illegal or intentionally tortious conduct. Counsel asserted that the applicant had acted in self-defense when he struck Castille. Counsel stated that Castille had assaulted the applicant with a deadly weapon.

{¶ 4} The assistant attorney general maintained that the claim should be denied. The assistant attorney general stated that the applicant had failed to present sufficient proof that a valid agency relationship was established between him and Sefcik. Moreover, the assistant attorney general asserted that the applicant had engaged in substantial contributory misconduct when he initiated the assault upon Castille. The assistant attorney general stated that Castille merely acted in self-defense against the applicant's physical advance upon his person. The assistant attorney general also noted that the grand jury refused to indict Castille for felonious assault upon the applicant.

{¶ 5} R.C. 2743.51(M) states:

(M) "Contributory misconduct" means any conduct of the claimant or of the victim through whom the claimant claims an award of reparations that is unlawful or intentionally tortious and that, without regard to the conduct's proximity in time or space to the criminally injurious conduct, has a causal relationship to the criminally injurious conduct that is the basis of the claim.

{¶ 6} R.C.2743.60(F) states:

(F) In determining whether to make an award of reparations pursuant to this section, the attorney general or panel of commissioners shall consider whether there was contributory misconduct by the victim or the claimant. The attorney general, a panel of commissioners, or a judge of the court of claims shall reduce an award of reparations or deny a claim for an award of reparations to the extent it is determined to be reasonable because of the contributory misconduct of the claimant or the victim. When the attorney general decides whether a claim should be denied because of an allegation of contributory misconduct, the burden of proof on the issue of that alleged contributory misconduct shall be upon the claimant, if either of the following apply:

(1) The victim was convicted of a felony more than ten years prior to the criminally injurious conduct that is the subject of the claim or has a record of felony arrests under the laws of this state, another state, or the United States.

(2) There is good cause to believe that the victim engaged in an ongoing course of criminal conduct within five years or less of the criminally injurious conduct that is the subject of the claim.

{¶ 7} From review of the file and with full and careful consideration given to all the information presented at the hearing, this panel makes the following determination. The applicant was a victim of criminally injurious conduct because he was severely assaulted by Castille. Moreover, we also find that the applicant engaged in contributory misconduct, albeit not substantial. In light of the applicant's testimony and the witness statements contained in the file, we believe that both parties in this matter engaged in intentionally tortious conduct. However, we find Castille's conduct to have been more egregious because he used a deadly weapon against the applicant. Therefore, all awards of reparations shall be reduced by 40 percent pursuant to R.C. 2743.60(F) and 2743.60(I). Based upon the above, the March 11, 2005 decision of the Attorney General is reversed and the applicant is awarded $849.83 ($1,416.39 less 40 percent) for unreimbursed allowable expense.[1]

IT IS THEREFORE ORDERED THAT

1) The March 11, 2005 decision of the Attorney General is modified to render judgment in favor of the applicant in the amount of $849.83;

2) This claim is remanded to the Attorney General for payment of the award;

3) All future awards shall be reduced by 40 percent pursuant to R.C. 2743.60(F) and 2743.60(I);

4) This order is entered without prejudice to the applicant's right to file a supplemental compensation application within five years of this order pursuant to R.C. 2743.68;

5) Costs are assumed by the court of claims victims of crime fund.

Decision modified.

HEWITT, BARWELL, and LEHOTY, Commissioners.

---

1. On September 30, 2005, the Attorney General filed a supplemental memorandum indicating that the applicant had incurred unreimbursed economic loss in the amount of $1,416.39.